LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Proposed Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re: | Case No. 25-16917-abl |
|---|---|
| CRS SERVICES, LIMITED, | Chapter 11 |
| Debtor. | Date: January 21, 2026<br>Time: 1:30 p.m. |

**MOTION TO: (I) VALUE THE COLLATERAL OF REVENUED LLC PURSUANT TO PROOF OF CLAIM NO. 5, AND (II) DETERMINE ITS SECURED STATUS PURSUANT TO 11 U.S.C. § 506 FOR PURPOSES OF PLAN CONFIRMATION**

CRS Services, Limited, a Nevada limited liability company, as debtor and debtor in possession (the "Debtor"), submits its motion (the "Motion"): (a) to value the collateral of Revenued LLC (the "Revenued"), pursuant to its filed proof of Claim No. 5, and (b) to determine its secured status pursuant to § 506(a) of the Bankruptcy Code.[1]

This Motion is made and based on the points and authorities herein, the *Omnibus Declaration of Steven D. Boyer in Support of the Debtor's Initial Emergency Motions and Related Relief* (the "Omnibus Declaration") [ECF No. 10], and the Omnibus Declarations of Steven D. Boyer (the "Boyer Valuation Declaration") and Daniel C. Watson (the "Watson Declaration") filed in support of this Motion and the Debtor's other various motions to value, the papers and pleadings

---

[1] All references to the "Bankruptcy Code" are to title 11 of the United States Code, all references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "LR" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

on file in this case, judicial notice of which is requested, and any arguments made at the hearing on this matter.

## I. INTRODUCTION

1. "CRS" is an abbreviation of "Commercial and Residential Security." The Debtor is an authorized dealer of Brinks Home™ security, smart home, and surveillance systems for residences in Las Vegas. The Debtor has been in business since 2003 and is owned by Steve and Cristina Boyer, husband and wife. The Debtor has multiple websites including www.crshomeservices.com and www.smarthomesnv.com.

2. The Debtor filed for bankruptcy to address about $483,000 in Economic Injury Disaster Loans (the "EIDLs") borrowed from the U.S. Small Business Administration (the "SBA") during the COVID-19 pandemic to sustain operations, about $200,000 in merchant cash advances (collectively, the "MCAs") borrowed more recently when a large portion of the Debtor's sales team was recruited away, thus requiring it to hire and train new staff and rebuild, and unsecured loans and trade debt of about $500,000, much of which was incurred for the same reason.

## II. JURISDICTION AND VENUE

3. On November 17, 2025 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code"), thereby commencing its bankruptcy case (the "Chapter 11 Case"). The Debtor elected to be treated under Subchapter V of chapter 11 of the Bankruptcy Code, and thus is authorized to continue operating its business as a debtor in possession pursuant to § 1184 of the Bankruptcy Code. On November 19, 2025, Edward Burr was appointed as the Subchapter V Trustee [ECF No. 21].

4. The Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and LR 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Pursuant to LR 9014.2, the Debtor consents to the entry of final orders and judgments by the bankruptcy judge. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170  Fax: (702) 382-1169

### III.    STATEMENT OF FACTS

**A.    The EIDLs with the SBA.**

5.    In May 2020 and March 2022, the Debtor, as borrower, obtained several EIDLs from the SBA, as lender, in the aggregate principal amount of $500,000. The Debtor was required to repay the EIDLs in monthly installments over thirty (30) years at the rate of $2,526 per month. The EIDLs were evidenced by various Loan Authorization and Agreements, and Promissory Notes.  Omnibus Dec. ¶ 5, and Exs. 1-4.

6.    Pursuant to Security Agreements accompanying the EIDLs, the SBA was granted a security interest in substantially all of the Debtor's personal property to secure repayment of the EIDLs, which included: "all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code," and including all products, proceeds and collections of the foregoing (collectively, the "SBA Collateral"). Id. ¶ 6, and Exs. 5-6. The SBA perfected its security interest in the SBA Collateral by filing a UCC-1 financing statement with the Nevada Secretary of State on May 27, 2020, and renewed on May 12, 2025. Id. ¶ 7, and Ex. 7.

7.    The Debtor has been making payments on the EIDLs, and the current balance owing on them as of the Petition Date is about $483,000. Id. ¶8.

**B.    The MCAs.**

8.    The Debtor is also a party to three (3) MCAs, as follows: (a) on or about January 4, 2024 with FinWise Bank, through Mulligan Funding ("FinWise Bank"), which consolidated a prior loan, and left a remaining original repayment amount of $86,205, based on $64,816 funded; (b) on December 12, 2024 with Revenued pursuant to a Master Revenue Purchase Agreement with up to $132,000 borrowed, based on $100,000 funded, and which the Debtor presently believes it

3

owes in the amount of $72,000; (c) on July 10, 2025 with Alliance Funding Group ("Alliance Funding"), which included a repayment amount of $72,759, based on $52,430 funded. All of the foregoing agreements also included broad grants of security interests in substantially all of the Debtor's assets. Id. ¶ 9, and Exs. 8-10.

9. To the extent the MCAs filed financing statements to perfect their security interests in and to their collateral, they did so through anonymous agents, but based on the timing of the filed statements, the Debtor believes that FinWise Bank filed its financing statement on September 23, 2021 and re-recorded it on April 9, 2024, and that Revenued filed its financing statement on September 4, 2025. Alliance Funding does not appear to have filed a financing statement to perfect its interest, id. ¶ 10, and Exs. 11-12, and its filed proof of claim confirms that it is not a secured creditor. Claim No. 3.

10. Accordingly, whatever security interests the Debtor granted to the MCAs, if any, were perfected after the SBA's security interest for its EIDLs, and thus are junior in priority to the SBA. Moreover, the Debtor asserts that the fair liquidation value of its assets is substantially less even the amount owed to the SBA, and thus that no value reaches down to the MCAs, thus rendering their subordinate liens "underwater" and thus without value.

C. **Post-Petition.**

11. The Debtor's filed bankruptcy Schedules [ECF Nos. 43 and 47], list a total of $56,972.56 in personal property assets, which includes the following: cash on hand and in the Debtor's bank accounts of $2,667.08, a security deposit in the possession of its landlord of $2,022.72, receivables totaling $657.76, the Debtor's office furniture and fixtures, and office equipment with a value of $4,525 pursuant to an appraisal as hereinafter described, and billing accounts with a saleable value of $45,000. Boyer Decl., ¶ 4.

12. In November 2025, Mr. Boyer obtained an appraisal of all of the Debtor's physical personal property from Daniel C. Watson (the "Watson Appraisal"), a true and correct copy of which is attached to the Watson Declaration as **Exhibit 1**. The Watson Appraisal provided itemized values of the Debtor's personal property and concluded that the fair market replacement

value of all such items was $4,525, which is the value of those assets included in the Schedules. Watson Decl., ¶ 2; Boyer Decl., ¶ 5.

13. The Watson Appraisal did not include a valuation of the Debtor's in-house accounts, which are alarm monitoring contracts the Debtor signed up with residences, and which accounts has not, in turn, sold to Monitronics International, Inc., which is the owner of the Brinks Home Security brand.[2] Although the Debtor has about 500 customers on a billing list, based on the Debtor's prior account sales to Brinks, only about 125 of them could be sold due to their features and what Brinks is generally willing to pay for them. For example, most of the Debtor's accounts are terminable at will, and thus could be terminated at any moment with little advance notice, and thus have no saleable value. Boyer Decl., ¶ 6.

14. The Debtor's Schedule D (Secured Claims) listed the following secured claims in the following priority: (a) the SBA in first position with a secured claim of $483,000, but with no proof of claim on file yet; (b) FinWise Bank in second position with a secured claim in the amount of $65,000, but with no proof of claim on file yet; (c) Revenued in third position in the amount of $76,973, as confirmed by its filed proof of claim, Claim No. 5, in the same amount. The Debtor's Schedules also indicate that only the SBA's lien is "in the money," whereas all of its MCAs' liens, are not, given the value of the Debtor's assets. Boyer Decl., ¶ 7.

15. The SBA and the MCAs were served with proper and timely notice of the commencement of the Debtor's bankruptcy case. [ECF Nos. 23 and 29].

16. The Debtor will shortly be filing its proposed chapter 11 plan of reorganization (the "Plan") and in order to prepare its projections and its Plan's classification and treatment, it requires a determination of the value of its various secured creditors' interests in their collateral, and thus to determine their secured status, if any. Boyer Decl., ¶ 8.

### IV.    LEGAL ARGUMENT

17. Bankruptcy Rule 3012(a) provides that "[o]n request by a party in interest and after

---

[2] Incidentally, Monitronics and various affiliates went through their own prepackaged chapter 11 cases in 2023. In re Monitronics Int'l, Inc., Case No. 23-90332 (Bankr. S.D. Tex. 2023), et al.

LARSON & ZIRZOW, LLC
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170   Fax: (702) 382-1169

notice--to the holder of the claim and any other entity the court designates--and a hearing, the court may determine: (1) the amount of a secured claim under § 506(a) of the Code . . . ." Fed. R. Bankr. P. 3012(a)(1). The request to determine the amount of a secured claim may be made by motion. See Fed. R. Bankr. P. 3012(b).

18. Section 506(a)(1) of the Bankruptcy Code provides as follows:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

19. For purposes of § 506(a)(1) of the Bankruptcy Code, property is valued using a replacement value standard, and based upon the property's proposed disposition or use in the plan of reorganization. First S. Nat'l Bank v. Sunnyslope Hous. L.P. (In re Sunnyslope Hous. L.P.), 859 F.3d 637, 644 (9th Cir. 2017) (citing Assocs. Com. Corp. v. Rash, 520 U.S. 953, 956 (1997)); In re Schwalb, 347 B.R. 726, 758 (Bankr. D. Nev. 2006) (same).

20. Further, § 506(d) of the Bankruptcy Code provides that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless-- (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title." 11 U.S.C. § 506(d). In the case at hand, the Debtor is not seeking to disallow Revenued's claim under either exclusion in § 502(d), but rather is seeking to value its collateral and allow for the resulting bifurcation of Revenued's claim for purposes of confirmation of its Plan pursuant to § 506.

21. Although there is authority supporting "lien stripping" in chapter 11 pursuant to §

6

506(d) of the Bankruptcy Code, First Fed. Bank of Cali. v. Weinstein (In re Weinstein), 227 B.R. 284, 292 & n.9 (B.A.P. 9th Cir. 1998) (citing Dever v. IRS (In re Dever), 164 B.R. 132, 145 (Bankr. C.D. Cal. 1994) ("lien-stripping under Section 506(d) is available in Chapter 11")), other cases disagree that that specific statute is the proper source of such authority.

22. In the case at hand, it is not necessary to decide that academic issue because the Debtor does not seek such relief in the context of the current Motion, and in fact, specifically provides for a preservation of Revenued's lien in its proposed form of order to avoid any potential controversy in this regard. As other authorities indicate, other provisions of the Bankruptcy Code -- namely, various plan confirmation requirements -- do expressly allow for such relief in those later proceedings, if needed. 4 Collier on Bankruptcy ¶ 506.06[1][c] (citing § 1123(b)(5)'s allowance of the modification of the rights of holders of secured claims, other than a claim secured only by a debtor's principal residence, and § 1129(b)'s permitting confirmation of a plan over the objection of a secured creditor, and that it does not require the preservation of all of the rights of the secured creditors). "The better view is that that section 506(d) does not authorize lien stripping. Rather, the ability to adjust the lien rights of secured creditors is provided elsewhere in the Code." Id.

23. The Debtor was organized and has continuously operated in Nevada, and thus is located in that State, Boyer Decl., ¶ 9, and thus Nevada's enactment of the Uniform Commercial Code is used to determine the validity and priority of liens in and to its property. Shapiro v. Newtek Small Bus. Fin., LLC (In re Global One Media, Inc.), 667 B.R. 878, 882 (B.A.P. 9th Cir. 2025).

24. Given the total value of the Debtor's personal property ($56,972.56) as compared with the amount owed to the SBA ($483,000), the SBA is substantially undersecured, and thus Revenued in junior, subordinate position is entirely unsecured. This result is not surprising given that the Debtor is a service-based business, and thus does not retain a large amount of equipment or inventory; rather, it is involved in selling and installing home alarm systems, and thus generally installs systems and recoup its costs and generate profits through monthly monitoring contracts. As a result, Revenued's claim should be bifurcated pursuant to § 506 of the Bankruptcy Code,

7

with a secured claim of $0.00, and as a general unsecured claim, Claim No. 5, for the remaining balance per its filed proof of claim of $76,973. Boyer Decl., ¶ 10.

## V.    CONCLUSION

WHEREFORE, the Debtor requests that the Court enter an order in the form as attached as **Exhibit 1**, thus ordering as follows:

1. Valuing Revenued's interest in its collateral owned by the Debtor at $0.00 for purposes of this bankruptcy case, including any confirmation proceedings on the Debtor's Plan.

2. Based on the foregoing valuation, bifurcating Revenued's claim pursuant to § 506(a) of the Bankruptcy Code into a secured claim of $0.00, and a general unsecured claim for its remaining $76,973 balance pursuant to its filed proof of claim, Claim No. 5.

3. Providing that nothing in the Order granting this Motion is intended to or should be construed as "stripping" Revenued's lien from its collateral pursuant to § 506(d) of the Bankruptcy Code, but without prejudice to whatever rights and remedies may exist in the context of any confirmation proceedings on the Debtor's Plan, and any other proceedings in this case hereafter.

4. Granting the Debtor such other and further relief as is just and proper.

Dated: December 17, 2025.

By: /s/ Matthew C. Zirzow
LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
MATTHEW C. ZIRZOW, ESQ., NBN 7222
850 E. Bonneville Ave.
Las Vegas, Nevada 89101

Proposed Attorneys for Debtor

# EXHIBIT 1

# EXHIBIT 1

LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | Case No. 25-16917-abl |
|---|---|
| CRS SERVICES, LIMITED, | Chapter 11 |
| Debtor. | Date: January 21, 2026<br>Time: 1:30 p.m. |

**ORDER GRANTING THE DEBTOR'S MOTION TO: (I) VALUE COLLATERAL OF REVENUED LLC PURSUANT TO PROOF OF CLAIM NO. 5, AND (II) DETERMINE ITS SECURED STATUS PURSUANT TO 11 U.S.C. § 506 FOR PURPOSES OF PLAN CONFIRMATION**

CRS Services, Limited, a Nevada limited liability company, as debtor and debtor in possession (the "Debtor"), having filed its *Motion to: (I) Value Collateral of Revenued LLC Pursuant to Proof of Claim No. 5, and (II) Determine its Secured Status Pursuant to 11 U.S.C. § 506 for Purposes of Plan Confirmation* (the "Motion") [ECF No. ___], which sought to value the interest of Revenued LLC ("Revenued") in and to its collateral, and to determine its secured

status in this case; no opposition to the Motion having been filed or raised at the hearing; the Court having reviewed and considered the Motion, and any papers or evidence filed in support; the Court having held a hearing on the Motion, with all appearances having been noted on the record, and with the Court having heard the arguments of counsel at the hearing; the Court having made its findings of fact and conclusions of law on the record at the hearing, which are incorporated herein pursuant to Fed. R. Civ. P. 52, as made applicable pursuant to Fed. R. Bankr. P. 7052 and 9014; and good cause appearing;

**IT IS HEREBY ORDERED**:

1. The Debtor's Motion is GRANTED.[1]

2. Revenued's interest in its collateral is valued at $0.00 for purposes of this Chapter 11 Case, including the confirmation proceedings on the Debtor's Plan.

3. Based on the foregoing valuation, Revenued's claim in this case, is bifurcated into its secured and unsecured portions pursuant to 11 U.S.C. § 506(a), and thus a secured claim of $0.00, and a general unsecured claim in the remaining amount of $76,973 listed in its filed proof of claim No. 5 against the Debtor in this case.

4. Nothing in the Order is intended to or should be construed as "stripping" Revenued's lien from its collateral pursuant to 11 U.S.C. § 506(d), but without prejudice to whatever rights and remedies may exist in any confirmation proceedings on the Debtor's Plan, and any other proceedings in this case hereinafter.

5. The Court reserves jurisdiction over the interpretation, implementation, and enforcement of this Order.

**IT IS SO ORDERED.**

. . .

. . .

. . .

---

[1] Unless otherwise indicated, all capitalized terms shall have the same meaning as in the Debtor's Motion.

2

PREPARED AND SUBMITTED BY:

By: _____
ZACHARIAH LARSON, ESQ., NBN 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ., NBN 7222
E-mail: mzirzow@lzlawnv.com
850 E. Bonneville Ave.
Las Vegas, Nevada 89101
Tel: (702) 382-1170
Fax: (702) 382-1169

Attorneys for Debtor

## **LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Ted Burr (Subchapter V Trustee):
Edward M. McDonald Jr. (Office of the U.S. Trustee):

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

3